**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | | |
|---|---|---|
| **ERIC M. LEVIN** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| **ALMS AND ASSOCIATES, INC., et al.** | * | **Civil Action No. 09-3403 MJG** |
| | * | |
| **Defendants.** | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR ORDER
STAYING CASE AND COMPELLING ARBITRATION**

Plaintiff, Eric M. Levin, by his undersigned counsel, hereby opposes Defendants' Motion to Dismiss or, in the Alternative, for Order Staying Case and Compelling Arbitration based on the facts and authority discussed below.

## I.        INTRODUCTION

Defendants' Motion should be denied because this action for rescission and restitution under the Investment Advisor's Act is not subject to arbitration.  Under the act, aggrieved clients of investment advisors have the right to sue in federal court to rescind the investment advisory contract and collect restitution where, as here, the investment advisor violates the act in any way. The act expressly *voids* any and all rights enjoyed by Defendants under the contract in the event that a violation of the act is found.  Plaintiff has alleged several violations of the act which, at this stage of the proceedings, this Court must assume to be true.

Defendants have failed to cite a single instance in which a court in any jurisdiction has compelled arbitration based on a claim for rescission such as this claim.  Further, the notion that

such claims are subject to mandatory arbitration clauses is inconsistent with the plain language of the act and Congress's intent in passing it.

Additionally, the bulk of the conduct alleged in the Complaint falls squarely outside the scope of the arbitration clause at issue.  To the extent that any violation of the act based on that conduct is found, none of Defendants' claims will be subject to arbitration.

Accordingly, this action should be permitted to proceed and Defendants' Motion should be denied.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."  This "plain statement" must merely "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957).  Further, Rule 8(a)'s "notice pleading" standard must be applied to all actions to which a heightened pleading standard has not been applied by rule or statute.  *See Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512-513 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168-169 (1993).

The Supreme Court has observed that, "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz,* 534 U.S. at 511 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  Additionally, under the notice pleading standard, a "complaint should not be dismissed unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nunes v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 609 F. Supp. 1055, 1061 (D. Md. 1985); *see also McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Chertkof v. Mayor & City Council of Balt.*, 497 F. Supp. 1252, 1258 (D. Md. 1980). Thus, when ruling on a Rule 12(b)(6) motion to dismiss, the court considers whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, a court must "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *Ben-Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F. Supp. 2d 604, 606 (D. Md. 2008) (quoting *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001)).

As the Supreme Court has recently recognized, a complaint must state sufficient facts to demonstrate a "plausible claim for relief." *Ashcroft v. Iqbal*, ___ U.S. at ___, 129 S. Ct. 1937, 1950 (2009). The Court explained that, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.   RELEVANT FACTS

Eric Levin retained Defendants to act as his financial advisor in 2004. At the inception of the relationship, and on an annual basis thereafter, Defendants presented to Mr. Levin for his signature a document entitled, "CFO Advisory Agreement". (Compl. ¶ 11.) Each year thereafter, Mr. Levin signed a CFO Agreement governing the terms of the relationship between the parties. (*Id.*) Until 2007, no agreement signed by Mr. Levin contained any arbitration clause. According to the Declaration of Steven P. Alms, the 2007 CFO Advisory Agreement is

the "most current" and "final" agreement."  (Alms Decl. ¶ 3.)[1]  Defendants acknowledge that the 2007 CFO Advisory Agreement is the only document containing the arbitration clause which is the subject of their Motion.  (Def.s' Mem. at 5 n.3.)

Plaintiff adequately alleged that Defendants violated, among other things, the Investment Advisors Act of 1940[2]  (the "Act") by failing to disclose a blatant conflict of interest and by failing to provide Mr. Levin with critical information known by Defendants that would have allowed him to avoid significant financial losses.  In early 2006, Defendants advised Mr. Levin that he should invest in a North Carolina limited liability company known as SilverDeer Olde Liberty, LLC.  (Compl. ¶ 14.)  At that time, and based upon the financial advice and counsel of Defendants, Mr. Levin invested $83,729.00 in SilverDeer Olde Liberty, LLC.  (*Id.* ¶ 15.)  During these discussions in early 2006, Defendants also advised Mr. Levin that he should invest in another SilverDeer-related entity known as SilverDeer Lakebound Fixed Return, LLC.  (*Id.*)  In reliance upon the advice provided by Defendants, Mr. Levin invested $500,000 in SilverDeer Lakebound Fixed Return, LLC.  (*Id.*)

Unbeknownst to Mr. Levin, Defendants had entered into a separate "CFO Advisory Agreement" with SilverDeer, LLC in October 2005, just a few months before Defendants recommended that Mr. Levin invest almost $600,000 in SilverDeer-related entities.  (*Id.* ¶ 16.)  Pursuant to A&A's agreement with SilverDeer, LLC, A&A was to receive an annual fee of $150,000 from SilverDeer, LLC for financial advisory services.  (*Id.*)  Thus, A&A established a financial relationship with SilverDeer, LLC prior to advising Levin to invest substantial sums in two (2) SilverDeer entities and never informed Levin about the relationship.  (Compl. ¶ 17.)

---

[1] Plaintiff neither accepts the truth of any of the statements in the Declaration nor concedes that this Court may consider such a pleading, which was in no way referenced in the Complaint, in the context of this Motion.

[2] Codified at 15 U.S.C. § 80b-1, *et seq.*

In 2005, 2006 and 2007, upon information and belief, SilverDeer, LLC breached its agreement with A&A by failing to pay A&A any of the fees due to A&A from the inception of the relationship.  (Compl. ¶ 18.)  A&A failed to inform Levin about SilverDeer's inability to pay its financial obligations as they came due and owing.  (*Id.*)

In addition, Defendants violated the Act by failing to disclose and/or credit Mr. Levin for additional fees they received from an outside brokerage firm.  Defendants advised Mr. Levin to invest several million dollars into a fee-based money management firm known as Convergent Wealth Advisors (f/k/a Lydian Wealth Management) ("Convergent").   (Compl.  ¶  23.) Defendants received substantial fees from Convergent while charging Mr. Levin advisory fees that they claimed to be the exclusive charge Mr. Levin owed them for services rendered.  (*See* Compl. ¶¶ 24-29.)

Finally, Defendants violated the Act by advising Mr. Levin to make Defendant Steve Alms a $60,000 loan on terms that were very favorable to Mr. Alms and Defendants based on a note drafted by Mr. Alms and never provided to Mr. Levin.  (*See* Compl. ¶¶ 30-38.)

## IV.   ARGUMENT

### A.   The Investment Advisors Act Overrides the Arbitration Clause

Notwithstanding the arbitration clause in one of the agreements governing the parties' relationship, Mr. Levin plainly has the right to bring suit in this Court to rescind all the agreements between the parties under the Act.  The Act provides, in relevant part:

> Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, *shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract . . . .*

15 U.S.C. § 80b-15 (emphasis supplied).   In *Transamerica Mortg. Advisors, Inc. v Lewis*, 444 US 11 (1979), the Supreme Court recognized that the Act's language voiding investment contracts based on violations of the act  by advisors provides aggrieved clients with the right to sue in federal court to rescind the investment agreement and recover restitution.   The Supreme Court has also recognized that the Act reflects a "congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser-consciously or subconsciously-to render advice which was not disinterested."   *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 191-92 (1963).   Consequently, the Act "creates a fiduciary duty on the part of investment advisers to exercise good faith and fully and fairly disclose all material facts to their clients, and an affirmative obligation "to employ reasonable care to avoid misleading [their] clients."   *Morris v. Wachovia Securities, Inc.,* 277 F.Supp.2d 622, 644 (E.D.Va. 2003) (quoting *Capital Gains Research,* 375 U.S. at 194).

Both the plain language of the Act and the Congressional intent underlying it are fundamentally inconsistent with mandatory arbitration.   *Cf. Transamerica,* 444 US 11; *Morris,* 277 F.Supp.2d at 644.   The Act explicitly *voids* all the advisor's rights under an advisory agreement to encourage full disclosure and good faith on the part of advisors.   *Morris,* 277 F.Supp.2d at 644.   To effectuate that intent, the Supreme Court has held that investors injured by their advisor's violation of the act may sue in federal court to rescind the agreement and collect restitution.   *See id.*   The Act would be rendered a nullity if advisors could avoid this remedy by placing mandatory arbitration clauses in their provisions and enforce such arbitration provisions notwithstanding the investor's effort to rescind.

To maintain an action for rescission under the Act, a plaintiff need only demonstrate that "(1) the Defendant is an investment adviser; (2) the Defendant used the mails or any other means or instrumentality of interstate commerce, directly or indirectly (3) to make a misstatement or omission of material fact to a client or prospective client; and (4) the Defendant acted negligently." *Id.*

Plaintiff has pleaded facts necessary to demonstrate a plausible claim for relief under each of these elements. There is no dispute that Defendants acted as Mr. Levin's financial advisor or that Defendants were engaged in interstate commerce. Additionally, the Complaint sets forth material misrepresentations and omissions made by Defendants with regard to the SilverDeer investments, the undisclosed Convergent fees and the self-serving note. *See* Section II, *supra.*

Despite a lengthy discussion on the general law on enforcement of arbitration clauses, Defendants fail to point to a *single* authority in which a court has compelled arbitration in a case in which the plaintiff sought rescission and restitution based on violations of the Act. Indeed, Defendants' reliance upon *Bakas v. Ameriprise Fin. Servs., Inc.,* 651 F. Supp. 2d 997, 1002 (D. Minn. 2009) in that regard is misplaced. *Bakas* was a class action involving state and federal securities claims and unspecified claims under the Act. *Id.* The court focused exclusively on the argument that various language concerning the exclusivity of federal courts for securities and certain claims under the Act rendered such claims exempt from arbitration. *Id.* The court did not consider or address whether claims for rescission are subject to arbitration clauses, and the case lends no support to Defendants' argument that they are. *See id.* In addition, Defendants inappropriately rely upon *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967) for the broad proposition that suits for rescission do not void arbitration clauses. *Prima*

*Paint Corp.* is the seminal case holding that a plaintiff may not avoid a contractual arbitration clause by asserting that the contract at issue was induced by fraud unless the plaintiff demonstrates that the arbitration clause itself was induced by fraud. *Id.* Much of the Court's holding in that case turned on the limited degree to which federal courts sitting in diversity review contract claims governed by state substantive law. *Id.* The fraudulent inducement line of cases bear no resemblance to the instant case, which involves a *federal* statute in which Congress has explicitly empowered federal courts to void contracts based on the precise malfeasance in which Defendants engaged in this case.

### B. Most of the Alleged Conduct is Not Subject to *any* Arbitration Clause

Defendants attempt to stretch the scope of the arbitration clause at issue beyond all recognition. After conceding that Mr. Levin signed numerous CFO Advisory Agreements prior to 2007 containing no arbitration clause, Defendants attempt to argue that disputes arising under those agreements are somehow subject to the 2007 CFO Advisory Agreement because they constitute a "dispute" and because the contract contains a merger clause. (Def.s' Mem. at 5 n.3.) The argument fails under its own weight. Most significantly, the merger clause referenced by Defendants does not purport to suggest that the 2007 agreement supersedes or replaces any prior agreement. (*See Id.* Ex. B ¶ 9(G).) The clause states merely that the contract contains the entire agreement concerning the relationship commencing January 1, 2007. (*See id.*) Indeed, the 2007 CFO Advisory Agreement contains no representation suggesting that it cancels out prior agreements. Additionally, Defendants argue that the term "[a]ny dispute" in reference to arbitration encompasses any dispute that ever occurred between the parties at any point in time concerning any subject matter. Such a reading is inconsistent with the common sense reading of

the statute and from courts' interpretation of arbitration clauses in general. *See Bakas,* 651 F. Supp. 2d at 1002.

The disputes arising prior to 2007 are governed by the contracts executed by the parties during that time. *See Bakas,* 651 F. Supp. 2d at 1002 (analyzing the language of each of several advisory agreements separately to determine enforceability of arbitration provision). Thus, only one of the three violations of the Act—Mr. Alms' self-serving note—occurred within the period that is arguably covered by the arbitration clause at issue. Moreover, whether that issue is subject to arbitration will depend on the ultimate determination as to whether Defendants violated the act and nullified their rights under the agreements. Because Plaintiff has demonstrated a plausible claim that they did, the Complaint should be permitted to proceed in this Court.[3]

## V.     CONCLUSION

Plaintiff has established a plausible cause of action for rescission and restitution under the Act. Further, the alleged conduct that falls outside the scope of the arbitration provision is sufficient to establish, at this stage of the proceedings, that Defendants' rights under the 2007 CFO Advisory Agreement are void and none of the claims asserted in the Complaint are subject to arbitration. For all these reasons, Plaintiff, Eric M. Levin respectfully requests that Defendants' Motion be denied.

---

[3] Section C of Defendants Memorandum contains a series of inappropriate and inaccurate characterizations that merit brief clarification. First, Defendants references to confidential settlement discussions and their attachment to pleadings containing excerpts of letters from counsel reflecting those discussions is simply inappropriate. Additionally, Defendants reference an attempt by counsel for Mr. Levin in a class action suit to which Defendants are not a party to obtain Mr. Alms' deposition. That proceeding has absolutely no bearing on this proceeding.

Dated:  January 29, 2010

Respectfully submitted,


_/s/_____
Matthew S. Sturtz (Fed. Bar No. 08269)
Steven J. Kelly (Fed. Bar No. 27386)
MILES & STOCKBRIDGE P.C.
One West Pennsylvania Ave., Suite 900
Towson, Maryland  21204
(410) 823-8151 (p)
(410) 823-8123 (f)
msturtz@milesstockbridge.com
skelly@milesstockbridge.com