IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEVIN,                                          *

        Plaintiff,                          *

        v.                                      *          Civil No. 1:09-cv-03403-MJG

ALMS & ASSOCIATES, INC., et al.,                *

                                                *

        Defendants.                         *

*       *       *       *       *       *       *       *       *       *       *       *       *

**REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR ORDER STAYING CASE AND COMPELLING ARBITRATION**

      Defendants Steven P. Alms and Alms and Associates, Inc. ("Defendants"), by their attorneys, file this Reply to Plaintiff Eric Levin's ("Plaintiff") Opposition to Defendants' Motion to Dismiss or, in the Alternative, For a Stay ("Opposition"). There is no merit and no supporting authority for the arguments set forth in Plaintiff's Opposition. Plaintiff is flatly incorrect.

      1.      Plaintiff is wrong with respect to the Rule under which Defendants' motion was filed, and the standard of review to be applied. This case should be dismissed because the Court lacks subject matter jurisdiction over claims that must be arbitrated. Thus, this is a motion under Rule 12(b)(1), not a motion for failure to state a claim under Rule 12(b)(6), and the Court may fully consider the record before it.[1]

      2.      Plaintiff is wrong with respect to his argument that claims under the Investment Advisers Act ("IAA") cannot be arbitrated. Plaintiff fails to cite a single

---

[1] *See, e.g., Allen v. Edwards*, Civ. No. 02-2921, 2003 WL 23892674 (D. Md. August 18, 2003).

decision from any federal court in any jurisdiction that has ever adopted Plaintiff's view, and simply ignores the numerous federal cases requiring arbitration of other federal causes of action.

3.      Plaintiff is wrong with respect to his argument that claims for rescission cannot be arbitrated.  Again, Plaintiff fails to cite a single decision from any federal court in any jurisdiction that has ever adopted Plaintiff's view, and Plaintiff ignores the established federal rule that equitable relief is subject to arbitration.

4.      Plaintiff is wrong with respect to his argument that the broad arbitration clause in the 2007 CFO Advisory Agreement does not include all claims asserted in this case and existing between the parties, as the language expressly states.  Again, Plaintiff ignores the copious case law cited by Defendants and fails to cite a single case denying arbitration on the grounds that Plaintiff asserts.  Under long-standing federal precedent, the Court is to interpret and apply that clause, which requires arbitration of "any dispute," to favor arbitration.

In short, Plaintiff asks this Court to leap to conclusions that have never been adopted by any Federal Court in any jurisdiction, to reach a result that is sharply at odds with the well-established and long-standing rules that govern the Federal Courts' respect for arbitration, and to ignore the plain language of the arbitration clause at issue, despite the lack of even a single on-point case that supports the Plaintiff's views.  This Court should reject Plaintiff's speculative theories and enter a final order dismissing this case in its entirety, or, in the alternative, stay the case pending arbitration.

**ARGUMENT**

I.  **Plaintiff's Claim For Rescission Under The Investment Advisers Act Is Subject To Arbitration In The Same Manner As Other Federal Causes Of Action.**

There is no merit to the Plaintiff's assertion that claims under the Investment Advisers Act are not arbitrable.  The Plaintiff's claim that he would be deprived of his federal cause of action if he were to arbitrate that federal claim was specifically rejected by the United States Supreme Court in *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989), which addressed private causes of action arising under the Securities Act of 1933.  Prior to *Rodriguez de Quijas*, the Supreme Court had held, since *Wilko v. Swan*, 346 U.S. 427 (1953), that such claims could not be arbitrated.  The Supreme Court resoundingly rejected that older view, however, in *Rodriguez de Quijas*, when the Court overturned *Wilko* and held that an agreement to arbitrate disputes relating to the purchase of securities extended to claims arising under the Securities Act.  The Court found that the purpose of the Securities Act was in no way undermined by requiring a plaintiff to pursue his federal cause of action before an arbitrator. *Rodriguez de Quijas*, 490 U.S. at 484.

For this reason, the federal courts repeatedly have required arbitration of numerous causes of action created by federal law. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (requiring arbitration of federal age discrimination claims); *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989) (requiring arbitration of federal Securities Act claims); *Shearson/American Express v. McMahon*, 482 U.S. 220 (1987) (requiring arbitration of federal RICO claims); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 640 (1985) (requiring arbitration of federal antitrust claims); *see also Bakas v. Ameriprise Fin.*

*Servs., Inc.*, 651 F. Supp. 2d 997, 1001 (D. Minn. 2009) (requiring arbitration of claims under the Investment Advisers Act); *Dorsey v. H.C.P. Sales, Inc.,* 46 F. Supp. 2d 804 (N.D. Ill. 1999) (requiring arbitration of Truth In Lending Act claims).  As this extensive body of federal case law demonstrates, a "district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights."  *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

There is simply no basis upon which Plaintiff can now contend that the Investment Advisers Act somehow prohibits arbitration, where these other federal causes of action do not.  Plaintiff does not, and cannot, cite a single case that, in fact, found a claim under the IAA not to be arbitrable.  The IAA cases cited by Plaintiff do not address arbitration at all.  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963), and *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 US 11 (1979), merely recognize that a limited private cause of action under the Act exists.[2]  There is no reason, however, that this federal cause of action cannot be arbitrated, just as numerous other federal claims are arbitrable.

Plaintiff's argument is squarely contrary to the only federal decision that undertook to consider the arbitrability of an Investment Advisers Act claim.  In their opening memorandum, Defendants cited and discussed *Bakas v. Ameriprise Fin. Servs., Inc.*, 651 F. Supp. 2d 997, 1001 (D. Minn. 2009).  In that case, the District Court held that

---

[2] The other IAA case cited by Plaintiff, *Morris v. Wachovia Securities, Inc.*, 277 F. Supp. 2d 622 (E.D. Va. 2003), also does not address whether a claim under the Investment Advisers Act is arbitrable.

claims under the Investment Advisers Act were no different than other federal causes of action, and thus subject to arbitration.[3]

There is no merit to Plaintiff's effort to distinguish *Bakas* by asserting that he seeks rescission in this case. *Bakas* also involved a plaintiff who made several state law claims against an investment advisor, and presented a single federal claim against the advisor under the IAA which provided the sole basis for federal jurisdiction. *Bakas*, 651 F. Supp. 2d at 999, 1003. The *Bakas* court did not need to expressly discuss claims for rescission under the IAA because an equitable claim for rescission is the *only* private cause of action recognized under the IAA. *See Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 US 11 (1979). As the District Court recognized in *Bakas,* an agreement to arbitrate does not deprive a plaintiff of his federal Investment Advisers Act claim, but merely subjects that federal claim to "resolution in an arbitral, rather than a judicial forum." *Bakas*, 651 F. Supp. 2d at 1001. That Court further noted that arbitrators are fully capable of rendering injunctive or equitable relief, including rescission. *Id.* at 1002 ("Certainly, nothing in the arbitration clauses limits the arbitrator's authority to grant broad injunctive or equitable relief to her.").

Nor is there any merit to Plaintiff's attempt to distinguish the rescission claim that he presents here from the rescission claim presented in *Prima Paint Corp. v. Flood &*

---

[3]  Defendants note that the District Court in *Levy v. Cain, Watters & Assocs., P.L.L.C.*, Civ. No. 2:09-723, 2010 WL 271300 (S.D. Ohio Jan. 15, 2010) recently was presented with a motion to dismiss or stay claims pending arbitration in a case where both state law breach of fiduciary duty and Investment Advisers Act claims had been raised. The Court did not rule as to the arbitrability of an IAA claim, but instead held that the case should be stayed and ordered to arbitration because the breach of fiduciary duty claims clearly were arbitrable. Under the federal precedent to enforce arbitration provisions for claims raising federal causes of action, Defendants believe that the correct approach would be to apply the reasoning utilized in *Bakas* and dismiss all claims in this case. At a minimum, however, *Levy* demonstrates that the court should stay these proceedings.

*Conklin Mf. Co.*, 388 U.S. 395 (1967).   As the Fourth Circuit has recognized, the reasoning applied in *Prima Paint* extends far beyond claims of fraud in the inducement. *Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, 1999 WL 674765 at *5 (4th Cir. 1999).   *Prima Paint* applies regardless of whether common law, statutory, or even sovereign rights are invoked.   *See, e.g., Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) (citing *Prima Paint* in a Title VII sexual harassment suit);   *Osborne v. Marina Inn at Grande Dunes, LLC*, 2009 WL 3152044 (D.S.C. September 23, 2009) (relying on *Prima Paint* and evaluating an arbitration clause on various grounds separately from a contract, including ambiguity, violations of public policy, unconscionability, etc.); *Riek v. Xplore-Tech Services Private, Ltd.*, 2009 WL 891914 (M.D.N.C. March 21, 2009) (relying on *Prima Paint*, evaluating the unconscionability of an arbitration clause separately from the contract, and finding the arbitration clause was enforceable);  *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assoc. Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) (J. Posner) (recognizing that, under *Prima Paint*, a Native American tribe could not argue that the alleged illegality of a contract based on sovereign immunity grounds also infected an arbitration clause); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 805-06 (N.D. Ill. 1999) (citing *Prima Paint* and rejecting argument that a claim for rescission under the federal Truth in Lending Act was not arbitrable).  In order to rescind a contract containing an arbitration clause, the plaintiff must first proceed through the arbitration and prove his case based on this or any other statutory claim.

In the face of this wealth of federal authority finding that federal claims of all types, and seeking remedies of all types, are properly subject to arbitration under the Federal Arbitration Act, the Plaintiff fails to cite even one decision finding a claim such

as the one he presents here not to be arbitrable.  Plaintiff's arguments are baseless and unsupported, and all of his claims are subject to arbitration under the FAA.

## II.     The Arbitration Clause In The 2007 CFO Advisory Agreement Applies To All Claims In This Case.

Plaintiff also contends that he should not be required to arbitrate his claims in this case because the arbitration clause is set forth in the 2007 CFO Advisory Agreement, while earlier versions of the CFO agreement did not contain an arbitration clause.  Again, Plaintiff fails to cite a single case that supports his position, he ignores the fact that his claims plainly fall within the language of the 2007 CFO Advisory Agreement, and he provides no basis upon which this Court could separate the Plaintiff's claims (which seek rescission of all fees for all time periods) into those arising before or after the 2007 CFO Advisory Agreement.  The language of the 2007 CFO Advisory Agreement should be applied according to its plain terms.

There can be no reasonable dispute that the arbitration clause in the 2007 CFO Advisory Agreement was intended to be very broad – the clause requires arbitration of "any dispute."  Exhibit B of Motion, ¶ 9.D.  At a minimum, this clause by its plain terms applies to disputes between the parties to the agreement that relate to the existing business relationship between them.  The parties to the 2007 CFO Advisory Agreement were aware of their relationship, were aware of prior services provided to Plaintiff by Defendants, and were aware of prior agreements.  If the parties had intended to exclude disputes relating to any such prior services, they could easily have done so by drafting a narrower arbitration clause that referred to disputes "arising under this agreement" or to disputes "arising after the date of this agreement."  The parties did not do so – they agreed to arbitrate "any dispute" and included an integration clause stating that the 2007

CFO Advisory Agreement embodies "all terms, understandings, and agreements by and between those parties."  Exhibit B of Motion, ¶ 9.G.

To the extent that there is any ambiguity in this broad arbitration clause, it is well settled that all doubts concerning the scope of an arbitration clause must be resolved in *favor* of arbitration.  *A.T.&T. Tech, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 657 (1986); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (concluding that broadly worded arbitration clauses are "capable of an expansive reach").  Plaintiff's claims are not divisible; all arise from the same business relationship and continuing course of conduct, and fall within the broad clause requiring arbitration of "any dispute."

Nor is there any merit to the Plaintiff's contention that the Court must separate claims that "arose" before the 2007 CFO Advisory Agreement from claims that arose later.[4]  Numerous federal courts have held that a broad arbitration clause will cover pre-existing disputes.  *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) (finding that arbitration clause providing that "any controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration" was "clearly broad enough" to include business transactions that occurred prior to signing of arbitration agreement).  For example, in *Coenen v. R.W.*

---

[4]  Plaintiff mischaracterizes the only case, *Bakas v. Ameriprise Fin. Servs., Inc.*, that he cites to support his assertion.  The Court in *Bakas* did *not* separately analyze each of several advisory agreements, and certainly did not split claims between those agreements.  To the contrary, the *Bakas* court observed that although each arbitration clause was worded slightly differently, the clauses in the agreements at issue all required arbitration of "'[a]ny controversy or claim arising out of or relating to this contract or the breach thereof.'"  *Bakas*, 651 F. Supp. 2d at 999.  Because the court noted that the language of all of the clauses was essentially the same, the Court did not, and did not have to, analyze each clause separately.  *Bakas* does not support Plaintiff's argument that the CFO agreements should be analyzed separately because the issue did not arise in the case.

*Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972), the Second Circuit held that a clause requiring arbitration of "any controversy" between New York Stock Exchange members applied to pre-existing controversies.  The Second Circuit concluded that the members intended "any controversy" to be kept out of court and that, if the drafters of the clause had intended otherwise, they would have used language such as "any future controversy."  *Id.*  As the Second Circuit concluded, to construe such a clause as applicable "only to 'future' disputes" would frustrate this purpose.  *Id.*

As another example, the District Court in *Marcus v. Masucci*, 118 F. Supp. 2d 453 (S.D.N.Y. 2000), enforced an arbitration clause and found that it applied to alleged ongoing conduct that occurred both before and after the signing of an agreement.  In *Marcus*, the plaintiff and defendant were individuals who had been partnered in a joint venture.  *Id.* at 454.  After defendant was later hired by Bear Stearns (also named a co-defendant) and plaintiff went to work for Chase Securities, the plaintiff brought suit against the defendant and Bear Stearns for misappropriation of trade secrets obtained during the partnership between plaintiff and defendant.  *Id.*  The court ruled that the plaintiff and defendant were bound by the broad NASD arbitration agreement, and ordered the entire dispute to arbitration.  *Id.* at 456, 458.  The court noted that the alleged misconduct included actions both before and after the arbitration agreement, and rejected the plaintiff's contention that his claims were limited to events occurring before he became bound to arbitrate.  *Id.* at 457.  The court held that the broad arbitration agreement applied equally to the events that occurred prior to and after the agreement.  *Id.* at 457.

Numerous other federal courts have reached the same conclusions, refusing to read temporal limitations into broad arbitration clauses, such as the agreement to arbitrate "any dispute" that governs this case. *See Smith/Enron Cogeneration Ltd. P'ship., Inc. v. Smith Cogeneration, Int'l*, 198 F.3d 88, 99 (2d Cir. 1999) (rejecting claim that arbitration should not be ordered where disputed events predated arbitration agreement, because the arbitration clause did not contain any "temporal limitation" and the court should focus on whether the claims were related to obligations created by the agreement containing the arbitration clause, not on when the claims arose); *Carlisle v. CitiMortgage, Inc.*, Civ. No. 4:06-677, 2007 WL 1557411 at *3 (E.D. Mo. May 25, 2007) (finding that an arbitration clause covering all employment disputes included disputes that arose prior to the plaintiff being hired); *Spurlock v. Life Ins. Co. of Virginia*, Civ. No. 98-D-222-N, 2000 WL 1785300 at *8 (M.D. Ala. Oct. 31, 2000) (finding that it was immaterial whether a dispute arose before or after an arbitration agreement was entered because the arbitration clause spoke "in terms of the business relationship" between the parties and was silent as to timing); *B.G. Balmer & Co., Inc. v. U.S. Fidelity & Guar. Co.*, Civ. No. 98-734, 1998 WL 764669 at *4-*5  (E.D. Pa. Oct. 30, 1998) (refusing to read "temporal and subject matter limitations" into an arbitration clause and ordering arbitration of disputes arising in part prior to the agreement because the arbitration clause was silent as to timing and spoke "in terms of relationships and not timing").

In this case, Plaintiff's Complaint necessarily indicates that he believes that each of his claims are intertwined and based on a common nucleus of operative facts, otherwise federal jurisdiction would be inappropriate for three out of four of the claims. *See* Complaint at ¶¶ 39-72 (Count I, Count II, and Count V are all state law claims –

sounding in negligence, negligent misrepresentation, and breach of contract, respectively; Count III, based on the IAA, is the only federal claim).  The Plaintiff has specifically declined the Court's invitation to articulate how his claims supposedly could be allocated between the different CFO Agreements, each of which applied to the same continuing relationship.  Such intertwined claims arising from the same business relationship would be arbitrable even under an arbitration clause far more narrow than the one at issue here. *See J.J. Ryan & Sons, Inc. v. Rohone Poulenc Textile S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (noting that arbitration clause referring to disputes "arising in connection with the present contract" "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute").  Plaintiff's claims all stem from the same business relationship, as part of which the parties entered into the 2007 CFO Advisory Agreement which provided for the arbitration of "any dispute."  Further, as specifically stated in the integration clause of the 2007 CFO Advisory Agreement, the parties plainly intended the 2007 agreement to constitute the entirety of *all* agreements and understandings between the parties.  *See* Exhibit B of Motion, ¶ 9.G (…this agreement encompasses and embodies all terms, understandings and agreements by and between [the] parties…).

III.    **The Plaintiff's Claims Are Inextricably Intertwined With And Based Upon Disputes And Events That Arose After Execution Of The 2007 CFO Advisory Agreement.**

Even if the Court were to accept Plaintiff's theory that only disputes arising after the execution of the 2007 CFO Advisory Agreement could be subject to the arbitration clause, each of Plaintiff's claims would still be arbitrable.  Plaintiff himself seems to recognize that his claims related to the alleged "self-serving note" are covered by the arbitration clause.  Opposition at p. 9 ("Thus, only one of the three violations of the Act –

Mr. Alms' self serving note – occurred within the period that is arguably covered by the arbitration clause at issue.")  Counts II and V plainly relate to this alleged "self-serving note," and would be subject to arbitration under any theory.  *See e.g.* Complaint at ¶ 47 (stating that "Alms then failed to provide the Promissory Note evidencing his debt to Levin"); Complaint at ¶ 70 ("Alms has not paid, and refuses to pay, the principal and interest due under the Promissory Note.").

Plaintiff's Count I and Count III both focus on allegations that Defendants breached their fiduciary duties to Plaintiff as investment advisors and violated the IAA by not making certain disclosures to Plaintiff.  The duties arising under the pre-2007 agreements were no different from those under the 2007 CFO Advisory Agreement.  If an alleged non-disclosure of information were a breach of such a duty in 2004, the non-disclosure of the same information presumably would be a breach in 2007.  Plaintiff cannot, and does not even try to, separate such claims into "before" and "after" causes of action.

Equally important, Plaintiff's own allegations depend upon alleged non-disclosure of information that could not have been disclosed until 2007 and after the 2007 CFO Advisory Agreement was in effect.  For example:

- Plaintiff's claims in Counts I and III, are based upon a claim that Defendants did not inform him of SilverDeer, LLC's ("SilverDeer") alleged inability to pay its financial obligations as they came due in 2005, 2006, and *2007*.  Complaint ¶ 18; *id.* ¶ 41 (stating as part of breach of fiduciary duty claim that "Defendants breached their duty to Levin by…(ii) failing to advise Levin that SilverDeer, LLC could not pay its debts…"); *id.* ¶ 59 ("Defendants violated the Act by…(iii) failing to advise Plaintiff that SilverDeer, LLC was unable even to pay its annual fee to Defendants…).

- Plaintiff's claims in Counts I and III are also based upon an allegation that Defendants provided him in *February 2009* with certain advice regarding

SilverDeer-related investments.   *See* Complaint ¶ 22; *id.* ¶ 41 ("Defendants breached their duty to Levin by…i) failing to advise Levin of their financial relationship with SilverDeer, LLC…"); *id.* ¶ 59 ("Defendants violated the Act by…(ii) failing to advise Plaintiff that Defendants were feeding investors into SilverDeer, LLC and related entities and receiving compensation from SilverDeer, LLC for such services…").

- Plaintiff's claims in Counts I and III are based upon a claim that Plaintiff learned in ***October 2009*** that an entity known as Convergent Wealth Advisors ("Convergent") had paid fees totaling more than $80,000 to Defendants from 2004 through ***mid-2009***.   Complaint ¶ 28; *id.* ¶ 41 ("Defendants breached their duty to Levin by…iii) failing to advise Levin of the fees that they were receiving from Convergent…"); *id.* ¶ 59 ("Defendants violated the Act by…(vi) failing to advise Levin that Defendants were receiving substantial fees directly from Convergent…").

Even after the Court invited him to do so, Plaintiff has provided no basis upon which the Court could separate Plaintiff's claims into those arising before the 2007 CFO Advisory Agreement and those arising afterwards.  Plaintiff specifically declined to supplement his response on that question.  The Court should apply the arbitration clause in accordance with its plain terms and in accordance with the long standing requirement that such clauses must be interpreted to favor arbitration.  All of Plaintiff's claims should be dismissed.

## CONCLUSION

For these reasons, Defendants ask the Court to dismiss the Complaint or, in the alternative, to order Plaintiff to proceed with his claims in arbitration and to stay this case until arbitration is concluded.

Respectfully submitted,


_____/s/ Randolph Stuart Sergent_____
CHRISTOPHER R. MELLOTT
Federal Bar No. 03734
RANDOLPH S. SERGENT
Federal Bar No. 23970
Venable LLP
750 E. Pratt St., Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742

*Attorneys for Defendants*
*Steven P. Alms and*
*Alms and Associates, Inc.*

Dated: February 12, 2010

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2010, an electronic copy of the foregoing Reply will be served by ECF, on Matthew S. Sturtz, Esq., Miles & Stockbridge P.C., One West Pennsylvania Ave. Suite 900, Towson, Maryland 21204, Attorney for Plaintiff Eric M. Levin.

_____/s/ Randolph Stuart Sergent_____
Randolph S. Sergent
