```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

ERIC M. LEVIN,                         *

        Plaintiff            *

   vs.                                 * CIVIL ACTION NO. MJG-09-3403

ALMS AND ASSOCIATES, INC., et al *

        Defendants           *

\*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER RE: ARBITRATION

The Court has before it Defendants' Motion to Dismiss or, in the Alternative, for Order Staying Case and Compelling Arbitration [Document 9] and the materials submitted relating thereto.  The Court has held a hearing and has had the benefit of the arguments of counsel.

## I.   BACKGROUND[1]

In 2004, Plaintiff Eric M. Levin ("Levin") retained Alms and Associates, Inc. ("A&A") and its founder and President, Steven P. Alms ("Alms") (collectively, "Defendants") to provide him with financial services.  Each year, from 2004 through 2007, the parties signed a CFO Advisory Agreement ("Agreement") pertaining to the services to be rendered, the fee to be paid, etc.  It appears that there was no Agreement signed after 2007,

---

[1]    The "facts" herein are stated as represented by Plaintiff.

therefore the 2007 Agreement (effective January 1, 2007) is the focus of the instant dispute.

The 2007 Agreement, but no earlier Agreement, included an arbitration clause. The clause states:

> Any dispute shall be submitted to binding arbitration before a single arbitrator in Howard County, Maryland, under the rules of the American Arbitration Association, and the decision of the arbitrator shall be final and binding upon the parties. In the event that the client shall implement any advice, suggestion, proposal or plan advanced by the advisor or developed as a result of interaction between the client, the advisor and/or any other advising professionals, the advisor shall not be liable to the client for any loss, liability, costs or expenses which the client may incur as a result thereof in excess of the actual amount of fees paid to the advisor by the client under this contract.

(2007 Agreement at ¶ 9D, Ex. B to Defs. Mot. to Dismiss (hereinafter, "2007 Arbitration Clause")).

The Complaint presents claims against Defendants for negligence, negligent misrepresentation, breach of contract and violations of the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b, et. seq. The claims are based upon events occurring in 2006, 2007, 2008 and 2009.

Defendants, relying upon the 2007 Arbitration Clause, ask the Court to dismiss the Complaint or stay the instant proceedings and require Levin to pursue his claims through

2

arbitration.  Levin contends that the 2007 Arbitration Clause is applicable only to claims arising after the effective date of the 2007 Agreement (January 1, 2007) and, even as to post-2006 claims, the 2007 Arbitration Clause is not enforceable with respect to his IAA claims.

II.   LEGAL CONTEXT

    A.   Procedure

The parties debate whether the Court should consider the instant motion as arising under Federal Rule of Civil Procedure Rule 12(b)(1) [absence of jurisdiction] or 12(b)(6) [failure to state a claim].  The question may be worthy of debate. See 5B Wright & A. Miller, Federal Practice & Procedure § 1350, nn. 14-15 (3d ed. 2004)(collecting cases).  However, inasmuch as the Court would reach the same result under either Rule, the matter is academic.

The issue before the Court is the extent to which, if at all, the Court has jurisdiction over the claims in the Complaint in light of the 2007 Arbitration Clause.  Thus, if required to choose a Rule, the Court would find Rule 12(b)(1) more appropriate than Rule 12(b)(6).

B.  Arbitration

The Federal Arbitration Act ("FAA") reflects a strong federal policy favoring arbitration, and courts are thus required to "rigorously enforce agreements to arbitrate." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987).  However, this liberal policy does not operate to compel arbitration of issues that do not fall within the scope of the parties' arbitration agreement.

Before compelling an unwilling party to arbitration, a court must "engage in a limited review to ensure that the dispute is arbitrable - i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food and Commercial Workers Intern. Union, 289 F.3d 297, 302 (4th Cir. 2002).

C.  Investment Advisers Act

The IAA, the last in a series of laws designed to eliminate certain abuses in the securities industry,[2] reflects "a

---

[2]   The IAA was preceded by the Securities Act of 1933, 15 U.S.C. § 77n, the Securities Exchange Act of 1934, 15 U.S.C. § 78a, the Public Utility Holding Company Act of 1935, 15 U.S.C. § 79, the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa, and the Investment Company Act of 1940, 15 U.S.C. § 80a-1.  See SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 187, 84 S. Ct. 275, 11 L.Ed.2d 237 (1963).

4

congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser – consciously or unconsciously – to render advice which was not disinterested." Capital Gains, 375 U.S. at 187, 84 S.Ct. at 280.

III. DISCUSSION

Levin contends that:

1. He cannot be compelled to arbitrate any of his IAA claims and,

2. Even if the 2007 Arbitration Clause can be applied to require arbitration of his IAA claims, the 2007 Arbitration Clause is not applicable to any claims that accrued prior to the effective date of the 2007 Agreement (January 1, 2007).

These contentions shall be addressed in turn.

A. Arbitration of IAA Claims

Levin asserts that the FAA cannot be applied to require arbitration of his IAA claims.[3]

A party opposing arbitration of a statutory claim has the burden of demonstrating that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue"

---

[3] Levin does not contend that the 2007 Arbitration Clause resulted from fraud, excessive economic power or a similarly compelling basis for the revocation of a contract. See McMahon, 482 U.S. at 226.

5

as evidenced from either the statutory text, legislative history or from an inherent conflict between arbitration and the statute's underlying purposes. McMahon, 482 U.S. at 226-27, 107 S.Ct. at 2337.

Levin contends that the text and congressional intent of the IAA are "fundamentally inconsistent" with a denial of access to the courts through mandatory arbitration. In this regard, Levin relies upon § 215 of the IAA that provides, in pertinent part:

> Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter . . . shall be void (1) as regards the rights of any person who, in violation of any such provision . . . shall have made or engaged in the performance of any such contract . . . .

15 U.S.C. § 80b-15(b).

Levin asserts that the Court should find that Defendants violated the IAA and, therefore, that the right to compel arbitration under the 2007 Arbitration Clause is void as to them. Thus, Levin contends that the Defendant's ability to compel arbitration would turn upon the merits of Plaintiff's IAA claims. However, the United States Court of Appeals for the Fourth Circuit has stated that "when deciding whether a dispute is arbitrable, courts may not judge the merits of the claim put

6

forward."  Gen. Drivers, Warehousemen and Helpers Local Union No. 509 v. Ethyl Corp., 68 F.3d 80, 83 (4th Cir. 1995).  Hence, the question of whether Defendants can compel arbitration of Levin's IAA claims will turn on the nature, and not the ultimate merits, of the claims.  That is, the Court will consider whether the IAA is incompatible with compelled arbitration.

The IAA imposes broad fiduciary obligations on investment advisers.  See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 17, 100 S.Ct. 242, 246 62 L.Ed.2d 146 (1979).  The Supreme Court has determined that "there exists a limited private remedy under the [IAA] to void an investment adviser's contract, but that the [IAA] confers no other private causes of action, legal or equitable."  Id. at 24 (emphasis added).  Recognition or creation of these "fiduciary obligations" in the IAA does not establish that the IAA is incompatible with arbitration.  As the Supreme Court has emphasized, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991)(internal quotations omitted).

Indeed, the Supreme Court, in a series of decisions that eroded an outdated judicial hostility towards arbitration,

enforced arbitration agreements that involved various securities laws and other federal statutes.  See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933);[4] McMahon, 482 U.S. at 220, 107 S.Ct. 2332 (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (Sherman Act).

In Quijas, the Supreme Court stated that the presence of a concurrent [federal and state] jurisdiction provision in the Securities Act of 1933 "suggest[s] that arbitration agreements, which are in effect, a specialized kind of forum-selection clause, should not be prohibited under the Securities Act, since they, like the provision for concurrent jurisdiction, serve to advance the objective of allowing buyers of securities a broader right to select the forum for resolving disputes, whether it be

---

[4]  It should be noted that the Quijas Court was presented with the issue of whether a nonwaiver provision in the Securities Act of 1933 that prohibited any stipulation that "waive[d] compliance with any provision" of the Securities Act nullified the parties' arbitration agreement.  Quijas, 490 U.S. at 482 (emphasis added).  The nonwaiver provision at issue in Quijas is also contained in § 215 of the IAA, albeit in a different subsection than the one relied upon by Levin.  Compare 15 U.S.C. § 77n with 15 U.S.C. § 80b-15(a).  However, the analysis in Quijas is instructive because the Court enforced the arbitration agreement after concluding that "resort to the arbitration process does not inherently undermine any of the substantive rights afforded . . . under the Securities Act." Quijas, 490 U.S. at 486.

judicial or otherwise." 490 U.S. at 483 (internal citations omitted). The same type of concurrent jurisdiction provision is found in § 214 of the IAA.

Moreover, it appears that an arbitrator would be able to provide Levin with the same relief as this Court on his IAA claims. There is nothing in the 2007 Arbitration Clause that limits the arbitrator's ability to rescind the agreement or award restitution, and the Fourth Circuit has noted that "[a]rbitrators enjoy broad equitable powers." Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 199 (4th Cir. 1990), aff'd 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Indeed, arbitrators "may grant whatever remedy is necessary to right the wrongs within their jurisdiction." Id.

Furthermore, the few decisions that the Court has found addressing the issue have held that IAA claims are subject to arbitration. See Bakas v. Ameriprise Fin. Servs., Inc.,[5] 651 F.Supp.2d 997, 1004 (D. Minn. 2009); Rocz v. Drexel Burnham Lambert, Inc., 154 Ariz. 462, 465, 743 P.2d 971, 974 (Ariz. App.

---

[5] Levin asserts that Defendants fail to cite a "single" case compelling arbitration of an IAA claim seeking rescission. Although Bakas does not explicitly discuss the arbitrator's ability to award rescission, the remedies of rescission, restitution and injunctive relief are the only private causes of action recognized under the IAA, and Levin fails to explain why a claim for injunctive relief should be treated differently from a claim for rescission for purposes of determining arbitrability.

1987) ("[Plaintiff] has not pointed out, nor have we found, anything in the Investment Advisers Act or in its legislative history indicating that claims brought under that act are nonarbitrable.").

Accordingly, the Court holds that Levin must pursue through arbitration those of his IAA claims that are subject to the 2007 Arbitration Clause. It is, therefore, necessary to determine which of Levin's claims are subject to the 2007 Arbitration Clause.

B.   Pre-2007 Claims

The Complaint includes claims that accrued before and after 2007. The pre-2007 claims include, at least, claims relating to Levin's investments in 2006 in certain "SilverDeer" entities.[6] The 2007 Arbitration Clause states: "Any dispute shall be submitted to . . . arbitration." (2007 Agreement at ¶ 9D.) Defendants contend that the term "any dispute" includes disputes regarding claims that accrued prior to the January 1, 2007 effective date of the 2007 Agreement. Levin contends that the 2007 Arbitration Clause is not applicable to claims that accrued

---

[6]   The Complaint also sets forth claims relating to an investment in Lydian Wealth Management (later "Convergent Wealth Advisors") but does not specify when the claims would have accrued.

10

prior to the effective date of the 2007 Agreement, the only Agreement containing an arbitration clause.

The Fourth Circuit has stated that there is a "heavy presumption of arbitrability" which requires doubts concerning the scope of arbitrable issues to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>Drews Distrib., Inc. v. Silicon Gaming, Inc.</u>, 245 F.3d 347, 349 (4th Cir. 2001).

Moreover, there are cases in which courts have given retroactive effect to broadly worded arbitration clauses. <u>See E.g.</u>, <u>Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 13 F.3d 330, 332 (10th Cir. 1993)(concluding that an arbitration clause providing that "any controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration" was broad enough to include pre-contract business dealings); <u>Coenen v. R. W. Pressprich & Co.</u>, 453 F.2d 1209, 1212 (2d Cir. 1972)(concluding that an arbitration clause in the NYSE constitution requiring "any controversy between parties who are members" encompassed disputes arising prior to the plaintiff's joining the NYSE); <u>see also</u> <u>Kristian v. Comcast Corp.</u>, 446 F.3d 25, 36 (1st Cir. 2006) (giving retroactive effect to a clause that required the arbitration of "any claim … arising out of this agreement or the

11

services provided" after concluding that the "or the services provided" language meant retroactive effect and that the immediately preceding agreement also contained an arbitration clause which indicated that the parties did not intend to significantly alter the pre-existing relationship.)

In B.G. Balmer & Co., Inc. v. U.S. Fidelity and Guar. Co., 1998 WL 764669, at *4 (E.D. Pa. Oct. 30, 1998) (unpublished), the district court gave retroactive effect to a clause requiring arbitration of "any dispute" between an independent insurance agent and the insurance company since the clause spoke "in terms of relationships and not timing" and noted that the subject agreement contained a clause declaring that the agreement "supersedes . . . any prior agency agreement").

However, in Hendrick v. Brown & Root, Inc., 50 F.Supp.2d 527, 537-38 (E.D. Va. 1999), Judge Payne disagreed with Balmer's general premise of giving retroactive effect to an arbitration clause that "speaks in terms of relationship and not timing" and cautioned against utilizing the presumption in favor of arbitrability as a "mindless mantra."  In addition, Judge Payne stated that "[a]bsent contractual language which clearly evinces an intent to foreswear the right to litigate an accrued claim and instead to arbitrate it, the requisite of a valid waiver cannot be satisfied."  Id. at 536.  See also Choice Sec. Sys.,

12

Inc. v. AT&T Corp. and Lucent Tech., 1998 WL 153254, at *1 (1st Cir. Feb. 25, 1998)(unpublished)(refusing to give retroactive effect to a clause that required arbitration of "all disputes … arising out of or relating to … this Agreement" contained in the last of a series of one-year contracts because it had not been shown that the parties "ever contemplated so radical a retroactive renegotiation of their earlier agreements"); In re Hops Antitrust Litig., 655 F. Supp. 169, 172-73 (E.D. Mo. 1987) (finding that the series of contracts that preceded the arbitration clause encompassed discrete transactions and concluding that nothing in the record suggested an agreement by the parties to modify the earlier contracts).

In the instant case, the subject arbitration clause is contained in only the most recent of successive contracts. Prior to January 1, 2007, Levin had the right to proceed in a judicial forum with any claim relating to the Agreements. The Court does not find that, in this context, the 2007 Arbitration Clause can reasonably be read to constitute a waiver of Levin's right to a judicial forum with regard to accrued claims. See Hendrick, 50 F.Supp.2d at 535 (concluding that an arbitration clause contained in the last of a series of contracts entered into with an employee hired on a project-by-project basis did not encompass pre-arbitration clause disputes despite its broad language because such a reading "would have an employee waive a

vested right to judicial resolution of an accrued claim on the basis of silence in a contract drafted by his employer"); <u>Sec. Watch, Inc. v. Sentinel Sys., Inc.</u>, 176 F.3d 369, 373 (6th Cir. 1999)(distinguishing cases that had held arbitration clauses contained in "umbrella contracts" extended to supplemental contracts that lacked the arbitration clause because "much more [was] needed to infer an intention" to apply the arbitration clause to earlier agreements).

In addition, the 2007 Arbitration Clause includes a limitation that strongly supports Levin's contention. The clause states:

> In the event that the client shall implement any advice, suggestion, proposal or plan advanced by the advisor or developed as a result of interaction between the client, the advisor and/or any other advising professionals, the <u>advisor shall not be liable</u> to the client <u>for any loss</u>, liability, costs or expenses which the client may incur as a result thereof <u>in excess of the actual amount of fees paid to the advisor by the client under this contract.</u>

(2007 Agreement at ¶ 9D)(emphasis added).

There is no indication that the term "this contract" in the 2007 Arbitration Clause refers to the 2004, 2005, and 2006 Agreements. Nor would it be reasonable to find that Levin intended to reduce his potential recovery on accrued claims when he signed the 2007 Agreement.

In sum, the Court finds that the 2007 Arbitration Clause does not require arbitration of Levin's claims that accrued prior to the January 1, 2007 effective date of the 2007 Agreement.

### C. Further Proceedings

The Court has decided that Levin must pursue his claims that accrued after January 1, 2007 in arbitration and may pursue his pre-2007 claims in the instant lawsuit. The Court will confer with counsel and discuss the course of further proceedings.

## IV. CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss or, in the Alternative, for Order Staying Case and Compelling Arbitration [Document 9] is GRANTED IN PART and DENIED IN PART.

2. Plaintiff shall arrange a telephone conference to be held by July 30, 2010 to discuss further proceedings herein.

SO ORDERED, this Wednesday, July 21, 2010.

                                            /s/_____
                                     Marvin J. Garbis
                             United States District Judge